**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA,           *

Plaintiff                  *

v.                       *         Civil Action No. ELH-17-0273

COMMISSIONER OF CORR. *et al.*    *

Defendants             *
                           ***

## <u>MEMORANDUM OPINION</u>

The self-represented plaintiff, Donald R. Pevia, is an inmate currently confined at the North Branch Correctional Institution ("NBCI"). He filed an "Order To Show Cause For An [sic] Preliminary Injunction and Temporary Restraining Order," which was docketed as a civil rights complaint, pursuant to 42 U.S.C. § 1983. ECF 1. Pevia contends that defendants violated his right to access legal materials. *Id.* at 1. *See also* ECF 29.

The defendants are the Commissioner of Correction; Warden Frank Bishop; Lt. Thomas Sawyers; Sgt. Gregory Forney; and Correctional Officer ("C.O.") II Amy Conner. They have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 19.[1] The motion is supported by a memorandum (ECF 19-1) (collectively, the "Motion") and exhibits. Plaintiff opposes the Motion. ECF 23; ECF 25.[2] He has also submitted several exhibits.

---

[1] Citations are to the court's electronic docket.

[2] ECF 23 is titled "Motion for Summary Judgment and Response to Defendant's Motion to Dismiss." Upon review, ECF 23 appears to be an opposition to the dispositive motion and shall be construed as such. Additionally, ECF 25 and ECF 29 were docketed as "Supplement[s] to Complaint" but are, in actuality, supplements to the opposition.

Plaintiff's opposition responses contain specific allegations and claims not raised in his initial filing, including, among other things, claims concerning access to legal materials dating back to 2014, inability to use the computer without his own earphones, limitation on LASI

Plaintiff has also filed a motion to appoint counsel. ECF 26. In addition, plaintiff has filed a letter with the court (ECF 30) seeking, among other things, a copy of ECF 29. And, he seeks to add two additional defendants. *See* ECF 3.

No hearing is needed to resolve these matters. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted. Plaintiff's motions for appointment of counsel, for injunctive relief, and to add two defendants, shall be denied. But, his request for a copy of ECF 29 shall be granted.

## I. Background

### A. Plaintiff's factual assertions

In his Complaint, plaintiff alleges that in 2014, his security level was raised to "Max II," which he claims "denied him almost all access to law library." ECF 1 at 1. According to plaintiff, his only access to legal materials was through LASI[3] forms. *Id.*

In January of 2016, plaintiff received an "evidence disc from his post conviction lawyer." *Id.* He states that "on numerous occasions he attempted to gain access to the law computer to argue numerous issues to raise on his now pending Federal Habeas Corpus." *Id.* C.O. Conner advised plaintiff that the computer was sent out around December 6, 2016, for updating and, as

---

requests to one per week, Eighth Amendment violations, claims regarding denial of access to the legal library while housed on disciplinary segregation (ECF 23), and claims that in July of 2018 he requested that Officer Technell provide him greater access to the computer. ECF 29. These claims are not properly before the court and will not be considered. *See Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113-14 (5th Cir. 2005) (claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court); *see also Gilmour v. Gates, McDonald and Company*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Ware v. U.S. Bank Nat'l. Ass'n.*, 131 F. Supp.3d 573, 578 (S.D. Miss. 2015).

[3] LASI is the acronym for Library Assistance to State Institutions. It provides copies of published legal decisions to prisoners. ECF 19-4 at ¶ 7.

of January 10, 2017,[4] had not been returned. *Id*. at 2.

Plaintiff states that in October of 2016, defendants instituted a policy which denied all inmates on Housing Unit 2 access to the law library. *Id*. According to Pevia, "their exact words [were] 'Your library privileges has been revoked.'" *Id*.

In a supplement to the Complaint (ECF 3), plaintiff advised that he was subsequently moved to disciplinary segregation. *Id.* at 1.[5] He maintains that disciplinary segregation has the same limitations on access to the law library and legal materials as Housing Unit 2. *Id*. According to Pevia, he may only access law library materials via LASI. Moreover, no legal books are permitted in his cell and his access to a "law computer" is very limited, *i.e*. 45 minutes per week. *Id*.

Pevia asserts that "all [his] evidence and transcripts are on disc." *Id*. at 1-2. He maintains that, without adequate access to the computer, he cannot do legal research. *Id*. at 2. Pevia also complains that he must be handcuffed while listening to the discs, which prohibits him from taking notes, and that when the disc needs to be "re-wound" the officer must use the computer mouse, which plaintiff alleges violates his right to confidentiality. *Id*. at 2.

In a subsequent filing with the court (ECF 14), plaintiff advised that he had been removed from disciplinary segregation and returned to Housing Unit 2-general population. *Id.* at 1.

---

[4] Plaintiff indicates the computer had not been returned as of January 10, 2016, but it is evident he intended to write 2017. ECF 1 at 2.

[5] As noted, in Pevia's supplemental complaint (ECF 3), he seeks to add two defendants. They are Sgt. Warner and Case Manager Tenchnell. *Id.* at 2. The request shall be denied. Although leave to amend must be freely given by this court, leave to amend may be denied where the proposed amendment would be prejudicial to the opposing party, or the moving party has acted in bad faith, or the amendment would be futile. *See Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010). Here, the amendment would be futile as plaintiff has failed to allege any facts regarding Warner and Tenchnell. Other than indicating his desire to name them as additional defendants, Pevia has failed to specify any conduct leading to a basis to conclude that they violated his constitutional rights.

Plaintiff states that defendants Sawyers, Forney, and Conner are regular staff on his housing unit. *Id.* According to plaintiff, all legal work that he requires to be copied must be given to the tier officers and then to case management. *Id.* In order to use the copy machine he must submit a request to Conner. *Id.* at 2. Plaintiff must also turn in his administrative remedy requests to these officers. *Id.*

According to Pevia, on June 15, 2017, he was approached by an officer about documents he possessed in regard to another case pending before this court (*i.e.*, *Pevia v. Nines, et al.,* Civil Action ELH-17-10). Plaintiff states that he filed this document with the court due to "the very possibility of retaliation." *Id.* He recounts times where he believes defendants and other officers acted against him, and asks the court to "view any suspicious misconduct by the defendants as retaliation." *Id.* at 2.

In his initial filing, plaintiff indicated that he had to file an administrative grievance in order to obtain copies. ECF 1 at 2. Moreover, he indicates that at the time of filing the complaint, he was in the process of exhausting his administrative remedies. *Id.*

Pevia notes that he is serving a 60-year sentence and has multiple appeals to consider, as well as motions to re-open and for actual innocence. ECF 3 at 2. He also notes that he has other civil issues pending. *Id.*

As relief, plaintiff requests an injunction permitting him access to his legal materials and that defendants provide: "Updated law computer with 2016 Md Appeals for post conviction, Direct Appeals along with any and all Federal Appeals[;] 2.Up to date Md. Statute and codes, Md. Rule book for civil and criminal law[;] And any other legal material mandated by Md. Law." ECF 1 at 3.

**B.    Defendants' factual assertions**

Defendant Conner avers that in October and November of 2016, inmates on Housing Unit #2 at NBCI were involved in several gang related assaults involving weapons and the stabbing death of an inmate. ECF 19-3 (Conner Decl.) at ¶ 5. In order to diminish the potential sites for additional violence, Housing Unit #2 restructured the way inmates could use the "in-house library." *Id*. The reorganization limited the movement of inmates to meeting areas outside of Housing Unit #2 and increased use of the in-house library for other purposes, including religious services and group meetings. *Id*.

On October 29, 2016, defendant Sawyer issued a memorandum directing that inmates were required to submit a Library Request Form to the Librarian via institutional mail. ECF 19-3, ¶ 6. Inmates were permitted to access the "In-House Law Computer" and a copy machine by submitting a request form to Conner who, after receipt of the request, would place the inmate on a pass list. *Id*., ¶¶ 6-7.

NBCI Librarian Hammons avers that Housing Unit #2 inmates have access to an in-house legal computer, which has access to "LEXIS Nexis." ECF 19-4 (Hammons Decl) , ¶ 4. On an unspecified date, staff discerned that the computer had not been updated.. ECF 19-3, ¶ 8. On about November 30, 2016, staff from the information technology department took the computer to be updated. However, the hard drive malfunctioned, which required its replacement. ECF 19-3, ¶ 8; ECF 19-4, ¶ 5. The needed repair delayed the return of the computer. ECF 19-3, ¶ 8. The computer was returned on January 23, 2017. ECF 19-3, ¶9; ECF 19-4, ¶ 5.

Conner avers that she maintains a log of inmate requests to use the legal research computer and that plaintiff had access to the computer, except for the repair period from November 30, 2016 to January 23, 2017. *Id*. at ¶ 9. While the computer was being updated and

repaired, Housing Unit #2 was provided additional LASI forms by the NBCI Librarian, Rebecca Hammons, in order to provide an additional avenue for inmates to access legal materials. ECF 19-3, ¶ 10; ECF 19-4, ¶ 6. The LASI requests are processed by Hammon (ECF 19-4, at ¶ 7) who reports that plaintiff utilized LASI on an almost weekly basis. *Id*., ¶ 8. Conner reports that plaintiff made few requests for computer access.[6] *Id*., ¶ 11.

Defendants further explain that since April of 2016, plaintiff filed three ARPs concerning access to legal materials. ECF 19-2. I have summarized them below.

* ARP NBCI-2252-16, filed October 7, 2016, alleged that plaintiff could not listen to evidence CDs in the Housing Unit # 2 library because there were no speakers. He also alleged that the library did not have up to date legal books. ECF 19-2 at 9-10. The ARP was denied by the Warden. Plaintiff's appeal to the Commissioner was dismissed on March 15, 2017, upon a finding that the Warden had fully addressed plaintiff's complaint and plaintiff failed to provide additional evidence to substantiate his claim. *Id*. at 17.

* ARP NBCI-2422-16, filed November 3, 2016, complained about the elimination of the Housing Unit #2 library. *Id*. at 23-24. The Warden denied the ARP, noting that the housing unit had been on secure status due to serious gang assaults; the LASI program provided adequate access to legal materials; and inmates could request access to the in-house legal computer. *Id*. at 23, 29. Plaintiff's appeal to the Commissioner was dismissed on February 21, 2017, based on a finding that the Warden had fully addressed the complaint. *Id*. at 21-22.

* ARP NBCI-0105-17, filed January 11, 2017, complained about access to photocopies and use of the in-house computer. *Id*. at 36-37. The ARP was withdrawn by plaintiff on January 22, 2017. *Id*. at 38.

Russell A. Neverdon, Executive Director of the Inmate Grievance Office ("IGO"), avers that plaintiff did not file any grievances with the IGO regarding denial of access to the library or use of the legal computer. ECF 19-5 (Neverdon Decl), ¶¶ 2-3.

## II. Standard of Review

### A. Counsel

---

[6] Plaintiff counters that he did not request to use the Housing Unit #2 computer because he was on disciplinary segregation form January 12, 2017 to June 20, 2017. ECF 23 at 3.

A federal district court judge's power to appoint counsel under 28 U.S.C.§ 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *See Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017); *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), (stating that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel) abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989).

Plaintiff has demonstrated the wherewithal to articulate the legal and factual basis of his claims and the issues are not complicated. No exceptional circumstances exist warranting the appointment of counsel under §1915(e)(1). Therefore, I shall deny ECF 26.

## B. The Motion

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed. App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the

alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the

_____

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the ground that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for

summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

I am satisfied that it is appropriate to address defendant's motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)),

*cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

### A.     Failure to exhaust

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies. If plaintiff's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. Section 1997e(a) of the PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534

U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[8]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may

---

[8] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," Md. Code Ann. Corr. Servs. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

not excuse a failure to exhaust. *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase v. Peay*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024 (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross v. Blake*, \_\_\_\_ U.S. \_\_\_ 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at

1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

This is not a case of unavailable administrative remedies. Here, Pevia partially availed himself of the administrative process, as previously recounted.

Maryland Department of Public Safety and Correcitonal Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.) §§ 10-201 *et seq*. of the Correctional Services Article ("C.S."); Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP); OPS.185.0002.02.[9] The grievance procedure applies to the submission of

_____

[9] OPS.185.0002 is an Executive Directive created by the DPSCS, titled "Administrative

"grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02. A grievance must be filed in writing, in a format approved by the IGO, or by use of an ARP form. COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1). In C.S. § 1-

---

Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

101(k), a "managing official is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  In the DPSCS, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E.  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP.  The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee.  OPS.185.0002.05L.  For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B.  When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08.  The conduct of

such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, State Gov't §§ 10-101 et seq.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A.  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

It is clear that plaintiff failed to exhaust his administrative remedies regarding the claims asserted here. To the extent plaintiff raised claims in the ARP process sufficiently similar to those asserted in this complaint, he did not fully exhaust the remedies available to him before filing this case seeking injunctive relief.  Plaintiff filed ARPs concerning his inability to listen to evidence CDs in the Housing Unit #2 library (ARP NBCI 2252-16), the lack of available legal books (ARP NBCI 2252-16), and the elimination of the Housing Unit #2 library (ARP NBCI-2242-16).  He pursued these claims through the Commissioner level.  Defendants, through the affidavit of the Director of the IGO, maintain that plaintiff did not pursue any of these claims in a further appeal to the IGO.

Plaintiff admits in his initial filing that he was in the process of exhausting his administrative remedies when the case was instituted on January 17, 2017. ECF 1 at 2. In his unverified opposition, plaintiff states that he filed grievances with the IGO in both ARP NBCI 2252-16 and ARP NBCI 2242-16 on December 28, 2016, before receiving the denials of his appeals from the Commissioner of Corrections on March 15, 2017 and February 21, 2017, respectively. ECF 23 at 16. Plaintiff erroneously maintains that filing grievances with the IGO, before receipt of the Commissioner's response, was proper and all that was required. *Id*. He does not explain whether he ever received a response from the IGO.

Pevia suggests that defendants' exhibits support his position that he filed with the IGO, but the court can find no evidence in the record before it that plaintiff filed IGO grievances. He also seems to suggest that the Commissioner's statement in dismissing the ARPs, that "no further action will be taken through the ARP process" (ECF 19-2 at 17, 22), indicated that he was not required to proceed to the IGO. He is mistaken. As discussed above, the PLRA requires that inmates exhaust **all** available remedies. Clearly, the IGO process was available to plaintiff but he simply chose not to pursue it properly. Plaintiff's unsupported and unverified statements concerning his efforts before the IGO are insufficient to refute defendants' evidence that he failed to exhaust his administrative remedies.

Even if plaintiff filed grievances with the IGO, as he maintains, it is clear that he did not exhaust his administrative remedies prior to instituting this case. The instant case was docketed on January 17, 2017. ECF 1. Plaintiff's ARPs were dismissed by the Commissioner on February 21, 2017 and March 15, 2017. ECF 19-2 at 17, 22. Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on

other grounds).  In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."  *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015).

In light of the foregoing, defendants are entitled to summary judgment.

**B.**     **Injunctive relief**

Even if plaintiff had exhausted his remedies, he is not entitled to the injunctive relief he seeks.  A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689–90 (2008).  A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009).

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  In the prison context, courts should grant

preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at, 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Plaintiff has not sustained his burden of demonstrating that his requested injunctive relief is warranted. He has failed to demonstrate that the requested injunctive relief is necessary to avoid irreparable harm. The evidence presented to the court demonstrates that the legal computer has been repaired, updated, and returned to the housing unit. Further, plaintiff has access to and regularly utilizes LASI to complete legal research. Given plaintiff's access to legal materials, the equities do not tip in his favor. Finally, the court cannot, on the state of the record, conclude that plaintiff is likely to succeed on the merits of his claims.[10] Accordingly, the request for injunctive relief is denied.

A separate Order follows.

August 24, 2018
Date

_____/s/_____
Ellen L. Hollander
United States District Judge

---

[10] This court has found that the combination of services provided to Division of Correction prisoners through private contract with outside agencies such as the Prisoner Rights Information Services Management, Inc. ("PRISM"), the Office of the Public Defender, and LASI, is sufficient to ensure their right of access to the courts. *See Hall v. Maryland*, 433 F. Supp. 756, 779-80 (D. Md. 1977), *aff'd in part, vacated and remanded in part, Carter v. Mandel*, 573 F.2d 172 (4th Cir. 1978), *on remand, Carter v. Kamka*, 515 F. Supp. 825, 831 (D. Md. 1980), *declining to expand,* 932 F. Supp. 122 (D. Md. 1996).